T.C. Memo. 2010-71


UNITED STATES TAX COURT


JAMES HOWARD SCHROPP, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 24031-07L.                 Filed April 13, 2010.


        The IRS issued to P a notice of filing of Federal
tax lien for 2005, and P timely requested a CDP hearing
before the IRS's Office of Appeals under I.R.C. sec.
6320.  During the hearing P asked Appeals to reconsider
its rejection of an offer-in-compromise (OIC) P had
submitted to compromise $2.7 million in tax owed for
8 tax years, including 2005.  Appeals did not
reconsider the rejection in the CDP hearing but
affirmed the rejection outside the CDP hearing.  We
remanded to Appeals to consider the appeal of the
rejected OIC as part of the CDP hearing for 2005.
Appeals collected more information, held another CDP
hearing, and then sustained the rejection of the OIC
again.  R moved for summary judgment, and P opposed R's
motion but submitted no evidence.

        <u>Held</u>:  Appeals did not abuse its discretion in
sustaining the filing of a Federal tax lien when P
failed to provide information regarding what happened
to $2 million in income he earned during the years

covered by the OIC, failed to explain his current income sources, and failed to respond to concerns that his asset disclosure was intentionally incomplete. R's determination to sustain the filing of the Federal tax lien is sustained.

James Howard Schropp, pro se.

Nancy M. Gilmore, for respondent.

MEMORANDUM OPINION

GUSTAFSON, Judge: This case is an appeal by petitioner James Howard Schropp, pursuant to section 6330(d),[1] in which he asks this Court to review the notice of determination issued by the Internal Revenue Service (IRS) sustaining the filing of a notice of Federal tax lien to collect Mr. Schropp's unpaid Federal income tax of $26,085 for tax year 2005. On his petition Mr. Schropp gave a Maryland address. The case is currently before the Court on respondent's motion for summary judgment filed December 31, 2009, and Mr. Schropp's cross-motion for summary judgment filed January 21, 2010. For the reasons explained below, we will deny Mr. Schropp's motion and grant respondent's motion.

---

[1]Except as otherwise noted, all section references are to the Internal Revenue Code (26 U.S.C.), and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

The following facts are based on the declaration of Mary E. Craca, made under penalty of perjury pursuant to 28 U.S.C. section 1746,[2] in lieu of an affidavit.  Ms. Craca is a settlement officer in the IRS's Office of Appeals, and her declaration incorporates documents in the record of Mr. Schropp's collection due process (CDP) hearing held before the Office of Appeals pursuant to section 6320(b) and (c).  Mr. Schropp, who is an attorney and represents himself in this case, opposes respondent's motion and moves for summary judgment in his own favor.  However, his supporting "Statement" is not an affidavit

---

[2]Title 28 U.S.C. section 1746 provides in part as follows:

> Wherever, under any law of the United States or under any rule * * * made pursuant to law [i.e., including Rule 121], any matter is required or permitted to be supported, evidenced, established, or proved by the sworn * * * affidavit, in writing of the person making the same * * *, such matter may, with like force and effect, be supported, evidenced, established, or proved by the unsworn declaration * * *, in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially the following form:

> \* \* \* \* \* \* \*

> (2) If executed within the United States, its territories, possessions, or commonwealths: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

Consistent with that provision, Ms. Craca's declaration concludes, "Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing declaration is true and correct."

(because it is not sworn),[3] and it is not an unsworn statement in lieu of affidavit made under penalty of perjury;[4] and as is discussed below in parts I.A and II.B, it makes only summary assertions that do not raise any genuine issue of material fact.

Mr. Schropp's income tax liabilities

For some or all of the years 1994 through 2007, Mr. Schropp was a partner at the law firm Fried, Frank, Harris, Shriver & Jacobson. For the 8 years 1994, 1995, 1996, 1997, 1998, 1999, 2004, and 2005, Mr. Schropp had unpaid income tax liabilities totaling more than $2.7 million. His liability for 2005--the

---

[3]See Elder-Keep v. Aksamit, 460 F.3d 979, 984 (8th Cir. 2006) ("an affidavit, by definition, is 'a statement reduced to writing and the truth of which is sworn to before someone who is authorized to administer an oath.' Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir. 1985) (emphasis added)"); see also Black's Law Dictionary 62 (8th ed. 2004) (defining "affidavit" as "A voluntary declaration of facts written down and sworn to by the declarant before an officer authorized to administer oaths, such as a notary public").

[4]Title 28 U.S.C. section 1746 (see supra note 2) permits an unsworn statement to be used in lieu of an affidavit only if the unsworn statement is made "under penalty of perjury". Mr. Schropp's statement begins, "Petitioner, James H. Schropp, in support of his Motion for Summary Judgment, filed herewith, and in opposition to the Petitioner's [sic] Motion for Summary Judgment, respectfully states as follows"; and it ends, "Respectfully submitted, James H. Schropp." The statement thus fails to comply with 28 U.S.C. section 1746 because it is not made "under penalty of perjury". Mr. Schropp attached to his statement two exhibits (a March 2009 bank statement showing a payment of levy proceeds to the U.S. Treasury, and a February 2009 notice from the IRS of the application of an overpayment); and although these are not properly authenticated, we assume them to be authentic. They do not, however, affect the outcome of this case, for the reasons explained below in part I.B.

year in issue--was $26,085, i.e., less than 1 percent of the 8-year total. Mr. Schropp does not dispute these liabilities, which consist of tax liabilities that he reported but did not pay, plus interest and penalties. Our record shows that before June 2006 the IRS was engaged in activity to collect those liabilities, but that activity is not shown in detail and is not necessary to our opinion.

The June 2006 agreement

On June 13, 2006, an IRS revenue officer sent to Mr. Schropp's representative a letter that stated--

> the outline and key elements of the proposal to resolve your client's Federal tax liabilities is/are [sic] as follows:
>
> 1) Mr. Schropp will withdraw and remit sufficient funds from his IRA accounts to full pay the balances due for his 2004 assessed and 2005 estimated income tax liabilities by June 30, 2006.
>
> 2) Mr. Schropp will withdraw and remit sufficient funds from his IRA accounts to cover the estimated capital gains due from 1) above by June 30, 2006.
>
> 3) Mr. Schropp will withdraw and remit sufficient funds from his IRA accounts to cover his accrued estimated income tax liability through 6/15/2006 by June 30, 2006[.]
>
> 4) Mr. Schropp will withdraw the remainder of the funds in his IRA accounts by June 30, 2006 and place them on deposit in the escrow account of his representative, Richard H. Gins.
>
> 5) Once items 1) through 4) above have been satisfactorily completed we will release the levy on Mr. Schropp's income only;

A) Our levy on Mr. Schropp's partnership capital account will remain in effect pending the outcome of the Offer process. (I have discussed this with Fried Frank and they are amenable to same[.])

6) Mr. Schropp will tender an Offer in Compromise to this office by August 30, 2006 the amount of which will reasonably reflect his ability to pay including but not limited to the value of his partnership capital accounting and net disposable income. The offer will be fully supported and documented.

A) The escrowed IRA net proceeds in 4) above will be remitted with the Offer as a refundable deposit.

7) Myself and * * * [a superior] will review the Offer and make an initial determination as to its sufficiency and processibility. If the Offer meets both requirements <u>we will withhold further action</u> pending the outcome of the Offer process.

Please send us your response in writing not later than June 25, 2006, if you have any further questions regarding this matter please call me promptly at the phone number below. [Emphasis added.]

Our record does not include any response in writing to the IRS's proposal, but we assume (in Mr. Schropp's favor) that he accepted the proposal. He did submit an offer-in-compromise (OIC) on August 1, 2006, in which he proposed to pay $705,000 to compromise his unpaid liabilities (i.e., 26 percent of the 8-year total).[5] We assume (again in Mr. Schropp's favor) that the revenue officer and his superior did make an initial determination that the offer was "sufficien[t] and

---

[5]The record does not include Mr. Schropp's OIC, but the parties agree that he submitted one.

processib[le]", and that Mr. Schropp complied with paragraphs 1 through 4 of the June 2006 proposal. Consistent with that assumption, the revenue officer did forward the offer to the IRS's "OIC group" for consideration.[6]

The December 2006 Notice of Federal Tax Lien

On December 21, 2006, while the IRS was still considering Mr. Schropp's OIC, the IRS filed a notice of Federal tax lien (NFTL) against Mr. Schropp, with regard to Mr. Schropp's unpaid 2005 income tax of $26,085. On December 28, 2006, the IRS sent to Mr. Schropp a Notice of Federal Tax Lien Filing and Your Right to a Hearing under IRC 6320. The contact person listed on the NFTL was the offer specialist in the IRS OIC group assigned to process Mr. Schropp's OIC. The notice advised Mr. Schropp of his right to a CDP hearing.

The initial CDP hearing

On January 29, 2007, Mr. Schropp timely submitted to the IRS on Form 12153, Request for a Collection Due Process Hearing, his request for a CDP hearing before the IRS Office of Appeals. The

---

[6]The IRS Centralized Offer in Compromise Unit determines whether an OIC is processable, builds the OIC case, and forwards processable OICs to offer examiners. If the offer examiner approves an OIC, the taxpayer is notified and the executed OIC is transferred to an IRS compliance campus, which monitors the taxpayer's compliance with the terms of the agreement. Internal Revenue Manual pt. 1.4.17.6.2 (Mar. 1, 2006). A taxpayer may appeal a rejected OIC to the Office of Appeals. Sec. 7122(e)(2); sec. 301.7122-1(f)(5), Proced. & Admin. Regs.

CDP hearing took place in August 2007 before an appeals officer.[7] By that time, the offer specialist had denied Mr. Schropp's OIC, Mr. Schropp had made an intra-agency appeal, and that appeal was still pending before the Office of Appeals. Mr. Schropp requested that the appeals officer handling his CDP hearing review his OIC appeal as well. Although the appeals officer determined that the OIC appeal had not been assigned to an appeals officer, she concluded that the OIC appeal was outside the scope of the CDP hearing, and she declined to review it as part of the CDP process. On September 14, 2007, the appeals officer issued a notice of determination upholding the notice of lien.

Outside the CDP context, the appeals officer separately considered Mr. Schropp's OIC. The offer specialist had determined that, of the income that Mr. Schropp had earned during the years 2001 through 2006 (when he earned more than $750,000 per year), about $2 million could not be accounted for, and the IRS treated this as a probable source of funds that should be included in Mr. Schropp's reasonable collection potential,

---

[7]Section 6320(b)(3) provides that the CDP hearing shall be held before "an officer or employee" of the Office of Appeals. Thereafter, the statute refers to this officer or employee as the "appeals officer". See sec. 6330(c)(1) and (3). In the IRS Office of Appeals, hearings are held before persons with the title Appeals Officer and Settlement Officer. In this instance, the "officer or employee" who conducted the hearing had the title "Settlement Officer", but we refer to her by the statutory term "appeals officer".

rendering his offer inadequate.  The appeals officer sustained the IRS's rejection of Mr. Schropp's OIC on January 2, 2008.

Tax Court review of the initial notice of determination

On October 18, 2007, Mr. Schropp filed his petition in the instant case, appealing the adverse notice of determination issued in September.

The parties cross-moved for summary judgment; and at a hearing on the motions, the Court and respondent discussed the appeals officer's declining to review the OIC in the CDP context. The Court denied the cross-motions, and respondent moved the Court to remand the case for a supplemental CDP hearing, during which the appeals officer would consider the OIC.  The Court granted that motion by its order dated August 5, 2008.

The supplemental CDP hearing on remand

The supplemental CDP hearing took place by way of a face-to-face meeting on November 25, 2008.  Before that hearing Mr. Schropp provided the appeals officer with an unsigned copy of his 2007 tax return and a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, for her use in reconsidering the OIC in the CDP context.  On November 14, 2008, the appeals officer sent Mr. Schropp's representative a letter that explained her concerns and asked for more information.  The letter raised, among other things, the question that the offer specialist had previously

raised about the undisclosed whereabouts of Mr. Schropp's earnings, "especially in tax years 2006 and 2007". The appeals officer's November 14 letter concluded as follows:

> To summarize, I am concerned that full financial disclosure; disclosure of all individual and jointly owned assets, has NOT been made to date. I am concerned with the level of income that Mr. Schropp earned during the 2002-2006 time period, yet failed to make any voluntary payments towards his outstanding taxes. Without evidence of the extraordinary expenses, I am not convinced that some sort of dissipated income calculation should NOT be included in the reasonable collection potential on this account.

To the letter the appeals officer attached an "Asset Equity Table", listing Mr. Schropp's acknowledged assets--i.e., cash; three IRA accounts; a capital account at Fried, Frank; a residence; and a car. This table listed for each asset the fair market ("FM") value, quick sale ("QS") value, and encumbrances against the asset, and it reflected that from those assets alone Mr. Schropp had available equity totaling $1,654,908, which obviously far exceeded the $705,000 amount he had offered to pay.

Mr. Schropp, his representative, and the appeals officer discussed the appeals officer's letter and its concerns at the November 25 hearing. After the hearing the appeals officer sent a fax to Mr. Schropp's representative, confirming her requests for additional information and stating:

> If I am able to determine that Mr. Schropp has fully disclosed how he handles his money on a monthly basis, I am confident that I will be able to arrive at an offer amount that the Service would accept. The

question would then become, can Mr. Schropp actually FUND that offer.

Mr. Schropp did provide some additional information on December 22, 2008, but the appeals officer's concerns were not allayed. She found, in a November 2008 Suntrust Bank statement that Mr. Schropp provided in December 2008, further evidence that he had other undisclosed sources of income. Specifically, she noted in a letter to Mr. Schropp's representative that Mr. Schropp's wife had had only nominal income for the past 13 years, but Mr. Schropp had not explained how her checking account had had a balance sufficient to make a $76,598 payment in October 2008 for Mr. Schropp's 2007 taxes. Second, she noted a $13,190 deposit for which Mr. Schropp had never accounted. Third, she recalled the previous determination by the offer specialist that $2 million of Mr. Schropp's income from 2001 through 2006 had never been accounted for and should be included in his reasonable collection potential (RCP). She explained:

> Your protest indicated that the dissipated income calculation was unfair because Mr. Schropp had extraordinary expenses during 2002-2005 relating to the care and maintenance of his mother. You were repeatedly asked to document these expenses in an effort to eliminate the inclusion of a dissipated Income analysis from the RCP. To date, no information has been provided to document these expenses * * *.

## Supplemental Notice of Determination

Consequently, the appeals officer prepared, and the Office of Appeals issued on January 16, 2009, a Supplemental Notice of

Determination Concerning Collection Action(s) under Section 6320 and/or 6330.  The Office of Appeals once again sustained the notice of lien regarding Mr. Schropp's 2005 income tax liability. It held that the filing of the notice of lien was not barred by Mr. Schropp's June 2006 agreement with the revenue officer and that Mr. Schropp's OIC was properly rejected because the information he had provided was "insufficient to determine a reasonable collection potential on your account due to the apparent existence of undisclosed assets" and because the assets and income he had disclosed showed available equity of $1,654,908.  This analysis was given on an "Asset Equity Table" materially identical to the one that the appeals officer had previously set out in her letter of November 14, 2008.

Subsequent proceedings in this Court

On March 4, 2009, respondent filed a status report, advising the Court of the supplemental determination.  The case was then put on a trial calendar scheduled to begin February 1, 2010, in Baltimore, Maryland; but the parties filed their cross-motions for summary judgment.  Mr. Schropp's motion makes unsubstantiated complaints about IRS actions that are outside the scope of this lawsuit[8] and that we do not address, and makes other complaints

---

[8]Our jurisdiction extends only to the review of the notice of lien for Mr. Schropp's 2005 income tax liability; and since he included his 2005 income tax in an OIC for 8 years, we review the IRS's consideration of that OIC.

about the IRS's conduct of the CDP hearing and of prior proceedings in this litigation, which were already addressed by the Court's remand order requiring that Mr. Schropp be given a supplemental CDP hearing. His pertinent remaining contentions are:

- that the notice of lien was improperly filed in violation of the June 2006 agreement;

- that the Office of Appeals abused its discretion in rejecting his OIC because--

  " its conclusion that Mr. Schropp had failed to disclose all his assets was a "pretext"; and

  " its analysis of Mr. Schropp's disclosed assets was unexplained, and he "was not afforded any opportunity to rebut it"; and

- that the Office of Appeals, having rejected Mr. Schropp's OIC, abused its discretion in sustaining the notice of lien rather than making a counter-offer.

We discuss each of these contentions below.

## Discussion

### I. Applicable legal principles

#### A. Summary judgment standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary (and potentially expensive) trial. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted where there is no genuine issue as to any material fact, and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98

T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988).

The party moving for summary judgment bears the burden of showing that there is no genuine issue as to any material fact, and factual inferences will be drawn in the manner most favorable to the party opposing summary judgment. Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982). Respondent's motion carries that burden and is fully supported by the appeals officer's declaration under penalty of perjury, whereas Mr. Schropp submitted no equivalent statement, so that his motion is easily denied. We will therefore hereafter treat respondent as the party moving for summary judgment and Mr. Schropp as the party opposing it. That is, inferences will be drawn in the manner most favorable to Mr. Schropp. However, Rule 121(d) provides,

> When a motion for summary judgment is made and supported as provided in this Rule, an adverse party [such as Mr. Schropp] may not rest upon the mere allegations or denials of such party's pleading, but such party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. * * *

In compliance with Rule 121, respondent made and supported a showing of the facts of the case; but Mr. Schropp's only response is his opposition without any affidavit. Except where it relies on the documents that respondent previously submitted, Mr. Schropp's submission is not supported in compliance with

Rule 121.  We therefore must disregard his assertions of fact except to the extent they are supported by respondent's evidence.

### B.  Collection review principles

#### 1.  Basic statutory structure

When a taxpayer fails to pay any Federal income tax liability after demand, section 6321 imposes a lien in favor of the United States on all the property of the delinquent taxpayer, and section 6323 authorizes the IRS to file notice of that lien. However, within 5 business days after filing a notice of tax lien, the IRS must provide written notice of that filing to the taxpayer.  Sec. 6320(a).  After receiving such a notice, the taxpayer may, within 30 days, request an administrative hearing before the Office of Appeals.  Sec. 6320(a)(3)(B) and (b)(1). Administrative review is carried out by way of a hearing before the Office of Appeals pursuant to section 6320(b) and (c) (which references section 6330(b) and (c)); and, if the taxpayer is dissatisfied with the outcome there, he can appeal that determination to the Tax Court within 30 days under sections 6320(c) and 6330(d).

#### 2.  Jurisdiction

This Court has only the limited jurisdiction conferred on it by Congress.  Our jurisdiction to review IRS collection actions is delimited by section 6330(d)(1) to instances in which the IRS has issued a "determination", which it can do only if a taxpayer

timely requests a hearing, which he can do only if he received a notice of lien or proposed levy. Orum v. Commissioner, 123 T.C. 1, 11-12 (2004), affd. 412 F.3d 819 (7th Cir. 2005); Lunsford v. Commissioner, 117 T.C. 159, 161 (2001). Thus, to invoke our jurisdiction under the statutory structure described above, the taxpayer must show: (i) that he received a notice of lien or proposed levy, (ii) that within 30 days he requested a hearing, (iii) that he was issued a determination, and (iv) that he filed his petition within 30 days.

Mr. Schropp has satisfied the four prerequisites to invoke our jurisdiction to hear his appeal as to the notice of lien for his 2005 income tax: He received a notice of lien filing, he timely requested a hearing, he received a determination, and he timely filed his appeal in this Court. However, the IRS is attempting to collect tax from Mr. Schropp for many years other than 2005, and his motion complains of IRS collection action for which he has not shown that we have review jurisdiction: a March 2009 levy of a joint brokerage account, the proceeds of which the IRS applied to his liability for one or more of the years 1994 through 1999; the application of a 2007 income tax overpayment to his 1995 liability; and "plac[ing] liens against and seiz[ing] assets whenever possible". Mr. Schropp cannot use this 2005 lien case as a general forum for halting IRS collection

of his taxes for all years and subjecting that collection to review that Congress has not authorized.

The notice of determination that confers jurisdiction in this case did not address Mr. Schropp's OIC, but we review the supplemental notice of determination, see <u>Kelby v. Commissioner</u>, 130 T.C. 79, 86 (2008), and that supplemental notice did address the offer that Mr. Schropp made to compromise his liability for the year 2005 and 7 additional years. As a result, we have jurisdiction to review the Office of Appeals' consideration of that 8-year proposal. However, our jurisdiction in this case is limited to reviewing only the decision to sustain the NFTL as to 2005.[9]

### 3. Hearing procedures

In the case of a notice of lien, section 6320(c) provides that the procedures for the agency-level CDP hearing before the Office of Appeals are set forth in section 6330(c):

First, the IRS appeals officer must "obtain verification from the Secretary that the requirements of any applicable law or administrative procedure have been met." Sec. 6330(c)(1).[10] The

---

[9]See <u>Sullivan v. Commissioner</u>, T.C. Memo. 2009-4, 97 TCM (CCH) 1010, 1015 (2009) ("We therefore proceed to evaluate the appeals officer's exercise of discretion in rejecting the OICs, taking into account all the liabilities that were proposed to be compromised, even though we do not have jurisdiction to review the collection of all those liabilities").

[10]In the case of the lien filed against Mr. Schropp, the
(continued...)

notice of determination and the supplemental notice both set forth the IRS's compliance with these requirements; and because Mr. Schropp made no challenge as to verification in his petition (or in his recent filing), no verification issues under section 6330(c)(1) are at issue.

Second, the taxpayer may "raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy, including" challenges to the appropriateness of the collection action and offers of collection alternatives. Sec. 6330(c)(2)(A). Mr. Schropp's contentions pertain to that second set of issues, which we will discuss below.

Additionally, the taxpayer may contest the existence and amount of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B). Neither in his petition nor in his recent filing did Mr. Schropp dispute the underlying liabilities (which arise from the returns that he filed), so those liabilities are not at issue.

Finally, the appeals officer must determine "whether any proposed collection action balances the need for the efficient

---

[10](...continued) basic requirements, see sec. 6320, for which the appeals officer was to obtain verification are: assessment of the liability, secs. 6201(a)(1), 6501(a); notice and demand for payment of the liability, sec. 6303; and notice of the filing of the lien and of the taxpayer's right to a CDP hearing, sec. 6320(a) and (b).

collection of taxes with the legitimate concern of the person that any collection action be no more intrusive than necessary". The supplemental notice of determination undertook such a balancing, found that the lien filing "was appropriate and is sustained", and stated that the lien notice, in the absence of an acceptable offer or other agreement, protects the Government's interest in Mr. Schropp's assets if he should try to sell or encumber his property.

      4.   <u>Tax Court review</u>

When the Office of Appeals issues its determination, the taxpayer may "appeal such determination to the Tax Court", pursuant to section 6330(d)(1), as Mr. Schropp has done. In such an appeal (where the underlying liability is not at issue), we review the determination of the Office of Appeals for abuse of discretion. That is, we decide whether the determination was arbitrary, capricious, or without sound basis in fact or law. See <u>Murphy v. Commissioner</u>, 125 T.C. 301, 320 (2005), affd. 469 F.3d 27 (1st Cir. 2006).

The abuse-of-discretion standard obviously gives an advantage to the Commissioner as he defends the Office of Appeals' determination. However, when a case is before us on the Commissioner's motion for summary judgment, the advantage may tilt back to the taxpayer, because every inference is drawn in favor of the taxpayer and the issue we decide is simply whether

the taxpayer has presented evidence that raises a genuine issue of material fact on the question whether there was abuse of discretion.

II.  Respondent's entitlement to summary judgment

We find that Mr. Schropp has not raised any issue of material fact that would justify denial of summary judgment in favor of respondent.

A.  The notice of lien did not violate any agreement between Mr. Schropp and the IRS.

In June 2006 a revenue officer stated in writing that if Mr. Schropp would make an OIC that met certain standards, then "we will withhold further action pending the outcome of the Offer process".  (Emphasis added.)  Mr. Schropp construes this as a promise "that the Service 'will withhold further [collection] pending the outcome of the Offer process'", Schropp Statement, par. 10 (bracketed word in original).  That is, Mr. Schropp equates "action" with "collection", and understands "collection" to include the filing of a notice of lien.  Since Mr. Schropp did thereafter submit an OIC (which we assume met the standards required in the letter), and since the notice of lien at issue here was filed during "the Offer process" (i.e., while Mr. Schropp's offer was still being considered), he contends that the notice of lien violated the agreement, and that it was

therefore an abuse of discretion for the Office of Appeals to sustain the lien despite a contrary agreement.[11]

Mr. Schropp's interpretation of the June 2006 letter is unwarranted. The letter calls for certain payments by Mr. Schropp and the release of <u>levy</u> by the IRS. In that context, the IRS's withholding of "action" would be to forgo further levies. More important, Mr. Schropp's proposed interpretation (that "action" to be withheld included mere filing of notices of lien) would have rendered the letter self-contradictory: The letter explicitly solicited from Mr. Schropp an "Offer in Compromise". An OIC is made on Form 656, Offer in Compromise, which in 2006 included the following term--[12]

---

[11]Mr. Schropp contends that respondent has conceded and this Court has already held (in its order of April 28, 2008) that the notice of lien violated the June 2006 agreement. Schropp Statement, par. 13 (referring to "this Court's prior holding, and the Service's prior concession, that such collection action [i.e., the notice of lien], outside the 'context' of the Service's consideration of a pending Offer, in Compromise, was not appropriate"). This contention is far off the mark. This Court's order dated April 24, 2008, noted respondent's concession that "the Internal Revenue Manual instructs respondent to include petitioner's offer-in-compromise in the proceedings under I.R.C. sections 6320 and 6330 and that respondent did not do so". That is, the OIC had to be considered in the CDP hearing context (so that the Court could review the IRS's action on that offer). The order includes no mention whatsoever of the June 2006 agreement, and makes no suggestion that the IRS's filing of a notice of lien must await its consideration of the OIC. On the contrary, the order denied Mr. Schropp's prior motion for summary judgment (filed April 21, 2008), which had argued that the June 2006 agreement precluded any further collection action.

[12]Substantially the same language appears in paragraph (m)
(continued...)

(o)  The IRS generally files a Notice of Federal Tax Lien to protect the Government's interest on deferred payment offers.  Also, <u>the IRS may file a Notice of Federal Tax Lien during the offer investigation</u>.  This tax lien will be released when the payment terms of the offer agreement have been satisfied.  [Emphasis added.]

--and the following language above the taxpayer's signature:

If I/we submit this offer on a substitute form, I/we affirm that this form is a verbatim duplicate of the official Form 656, and I/we <u>agree to be bound by all the terms and conditions set forth in the official Form 656</u>.  [Emphasis added.]

As is noted above, Mr. Schropp's OIC is not in the record, but we take judicial notice of the terms of Form 656 and assume (in his favor) that his OIC was proper and therefore did include the prescribed terms.  If his OIC had not included the prescribed terms, then it would not have been a valid OIC, Mr. Schropp would have failed to comply with the revenue officer's proposal, and there would have been no agreement at all in June 2006.  See <u>Baltic v. Commissioner</u>, 129 T.C. 178, 180 n.4 (2007) (affirming the IRS's sustaining a lien notice while it considered the taxpayer's OIC, and stating that section 6331(k)(1) "generally blocks the IRS from collecting taxes by levy (though not by lien) while an OIC is pending").

Thus, a notice of lien may properly be filed while an OIC is under consideration or after it is accepted.  Even where the IRS has decided not to proceed with aggressive collection action

---

[12](...continued)
of the current (March 2009) Form 656.

(e.g., where it decides to accept an installment agreement, or to temporarily recognize a taxpayer as noncollectible), the IRS may file its notice of lien to retain its place in the line of a taxpayer's creditors. For example, Mr. Schropp has a residence worth $1.75 million; and the IRS could well intend that if he were to attempt to sell that residence, the IRS should receive those proceeds (to satisfy Mr. Schropp's old and enormous liabilities) rather than letting Mr. Schropp or one of his other creditors receive them. If so, then the filing of the notice of lien was critical to the protection of the Government's interest. Without a lien, the property might be sold and the proceeds paid to other creditors, hidden, or dissipated. The presence of the lien during the IRS's consideration of an OIC may be critical; without the filing of a notice of lien, the Government's interest is at risk, and the IRS could ill afford to take much time to consider an OIC. But with the lien perfected, the IRS can take the time necessary to give appropriate consideration to a proposed collection alternative.

Mr. Schropp has presented no evidence to suggest that the June 2006 letter forfeited the IRS's important rights and offered to Mr. Schropp an immunity that other taxpayers do not obtain.

B.   <u>The Office of Appeals did not abuse its discretion in determining that Mr. Schropp's RCP exceeded the amount of his Offer-in-Compromise</u>.

It is within the responsibility and discretion of the Office of Appeals to evaluate a taxpayer's RCP and to make judgments, in light of that RCP, about the reasonableness of the taxpayer's OIC.  When we review the decisions of the Office of Appeals, "We do not substitute our own judgment for that of Appeals, and we do not prescribe the amount we believe would be an acceptable offer-in-compromise" but instead correct only abuses of discretion. <u>Bartl v. Commissioner</u>, T.C. Memo. 2010-43; see also <u>Murphy v. Commissioner</u>, 125 T.C. at 320.  In deciding an abuse-of-discretion issue in the context of the Commissioner's motion under Rule 121, we draw every inference in favor of the taxpayer; but if the Commissioner's motion is supported as required by the Rule (i.e., when he makes a showing, supported by affidavit or other evidence, that the determination was reasonable), then the taxpayer is still required to come forward with evidence, in compliance with Rule 121(d), raising a genuine issue as to whether the determination reflects an abuse of discretion.

1.   <u>The Office of Appeals did not abuse its discretion in determining that Mr. Schropp had not disclosed all his assets</u>.

When the Office of Appeals accepts an OIC on the basis of doubt as to collectibility, it agrees to accept from the taxpayer less than full payment of an undisputed liability because it has

determined that, in view of the taxpayer's financial circumstances, full payment may not be possible. It is entirely reasonable that the Office of Appeals, before making such an agreement, should insist on knowing all of the taxpayer's assets in order to determine his RCP. See Internal Revenue Manual (IRM) pt. 5.15.1.3 (May 9, 2008). It could hardly be otherwise. That being the case, the Office of Appeals cannot reasonably accept an OIC unless and until it is satisfied that all the taxpayer's assets have been disclosed. If Appeals determines that some assets have not been disclosed, then it may reject an OIC; and if its determination is reasonable, then the Court must not overturn its exercise of discretion.

After the latest information submitted by Mr. Schropp, the appeals officer was left with unanswered questions about possible undisclosed assets: She found an unexplained substantial balance in a bank account of Mrs. Schropp, who was said to have had only nominal income for years; she found an unexplained deposit of $13,190 to that same account; and Mr. Schropp had never accounted for $2 million of his income from 2001 through 2006--about which the appeals officer asked in writing, before the supplemental CDP hearing, "If the money was not spent, where is it?"

Mr. Schropp has never answered those questions, either in the CDP agency-level hearing or in his opposition to respondent's motion for summary judgment. At some point he alleged that he

had spent substantial amounts on medical expenses, but the record does not show any substantiation of such expenditures. His opposition characterizes the appeals officer's conclusion about undisclosed assets as "inexplicable and unsupportable", but he offers no data to answer her questions or dispute her conclusion. Even if his statement had been either an unsworn statement made under penalty of perjury or a sworn affidavit and therefore could otherwise be considered, it fails to "set forth such facts as would be admissible in evidence," as Rule 121(d) requires. The Rule also provides that "an adverse party may not rest upon the mere allegations or denials of such party's pleading, but * * * must set forth specific facts showing that there is a genuine issue for trial." Mr. Schropp's statement contains conclusory denials, but no specific facts that would bring into question the appeals officer's conclusions that he had not fully disclosed his assets.

2. <u>The Office of Appeals did not abuse its discretion in determining that Mr. Schropp's equity in his disclosed assets exceeded the amount of his OIC</u>.

The IRS may generally compromise a tax liability on the basis of doubt as to collectibility where the taxpayer's assets and projected future income are less than the full liability. See sec. 301.7122-1(b)(2), Proced. & Admin. Regs.; see also IRM pt. 5.8.4.4 (Sept. 23, 2008). Income and assets in excess of those needed for necessary living expenses are treated as

available to satisfy Federal income tax liabilities.  See sec. 301.7122-1(c)(2), Proced. & Admin. Regs.  If a taxpayer has equity in assets, then as a general rule his reasonable collection potential is no less than the amount that could be realized by selling the assets or borrowing against that equity, and the IRS will have little doubt that it can collect at least that amount from this taxpayer.  If a compromise with that taxpayer is to be based on doubt as to collectibility, then the IRS may reject an OIC that offers a lesser amount.  The appeals officer concluded that, even looking only at the assets that Mr. Schropp had disclosed (and ignoring the income stream from his pension), his equity in those assets--over $1.6 million-- exceeded the $705,000 amount of his offer, and she determined that his offer should be rejected for that reason as well. Before the supplemental CDP hearing, she presented to Mr. Schropp her "Asset Equity Table" that calculated his $1.6 million equity. At the hearing he presented no information that changed her calculation, and consequently the supplemental determination replicated the same table and drew the same conclusion.

In his opposition, Mr. Schropp makes two criticisms of this calculation:

> No explanation of this purported 'analysis' was provided, and Petitioner was not afforded any opportunity to rebut it.  * * * The determination failed to correct the admittedly erroneous calculation of Petitioner's assets which purported to support the

rejection, and which the settlement officer herself had indicated she did not agree with.

The first of these criticisms is manifestly incorrect. The analysis in the Asset Equity Table is quite clear. The values reflected thereon might have been incorrect, but Mr. Schropp certainly was given an opportunity to rebut them. He did not do so in the CDP context, and he did not do so in his opposition to respondent's motion for summary judgment.

Mr. Schropp's second criticism of the asset analysis is that it is "admittedly erroneous" and that "the settlement officer herself had indicated she did not agree with" it. Mr. Schropp does not explain or substantiate this criticism, but elsewhere in his statement, he makes an apparently related comment, seeming to imply that the appeals officer admitted that his assets must be lower than the IRS had reckoned:

> Petitioner specifically objected [during the initial CDP hearing] to inaccurate calculations of his assets which had provided the basis for the rejection of his Offer by the "Offer specialist" who had initially rejected it, which the Respondent's settlement officer had specifically acknowledged, in writing, that she did not "entirely agree with." See letter from M. Craca, August 23, 2007, to Petitioner's counsel.

The letter to which he refers is apparently not in the record, and his statement is not adequate to support its assertions. However, even if his assertions are taken at face value, they are beside the point. The supplemental notice of determination acknowledges that the offer specialist's analysis had yielded a

different amount of assets--i.e., $1,319,604, a <u>lower</u> amount.  If it is true that the appeals officer did not "entirely agree with" this analysis, it seems that she came up with not a lower amount but a <u>higher</u> amount--$1.6 million--when she performed her re-analysis.

In any event, it was incumbent on Mr. Schropp to show any error in the IRS's analysis.  He did not do so, either in the CDP hearing or in this suit.  He has raised no genuine issue as to the reasonableness of the appeals officer's equity analysis.

C.    <u>The Office of Appeals did not abuse its discretion by failing to make a counter-offer</u>.

Section 6330(c)(2)(A) refers to "offers of collection alternatives" as a matter that a taxpayer "may raise at the [CDP] hearing".  That is, the statute presumes that collection alternatives are proposed by the taxpayer.  However, Mr. Schropp reads the appeals officer's fax of November 25, 2008, as if it promised him a counter-offer in the event his OIC was to be rejected.  What the appeals officer's fax actually said was this:

> <u>If I am able to determine that Mr. Schropp has fully disclosed how he handles his money on a monthly basis</u>, I am confident that I will be able to arrive at an offer amount that the Service would accept.  [Emphasis added.]

Mr. Schropp should and must have known that this was a big "If". In his first CDP hearing, and in the non-CDP consideration of his OIC, and in the supplemental CDP hearing, one of the IRS's recurring complaints was that Mr. Schropp had not shown where his

money was coming from (and therefore had not allayed the concern that he had undisclosed sources of money).  The appeals officer reminded Mr. Schropp of this concern in the letter she sent immediately before the supplemental hearing and in the fax that she sent after the hearing.  The appeals officer thought that she could "arrive at an offer amount that the Service would accept"-- but only "<u>If</u> I am able to determine" (emphasis added) full disclosure by Mr. Schropp.  She was unable to do so, for serious and specific reasons that she articulated and that Mr. Schropp has never answered.  See <u>supra</u> part II.B.1.  Mr. Schropp never satisfied the condition she had expressed ("If I am able to determine"), and she therefore never became able to propose an offer amount.

In the absence of Mr. Schropp's full disclosure of his assets, the appeals officer did not abuse her discretion by failing to propose an amount of an OIC based on doubt as to collectibility.  Rather, Mr. Schropp's nondisclosures had made that doubt unquantifiable.

## Conclusion

The record shows that the decision of the Office of Appeals to sustain the filing of the Federal tax lien was not arbitrary, capricious, or without sound basis in fact or law, and Mr. Schropp has not raised any genuine issue as to that fact.  As a result, we conclude that the Office of Appeals did not abuse

its discretion, and we hold that respondent is entitled to the entry of a decision sustaining the determination as a matter of law.

To reflect the foregoing,

<u>An order denying petitioner's motion for summary judgment and granting respondent's motion for summary judgment and a decision sustaining the filing of the notice of Federal tax lien will be entered</u>.